UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANU SHAH,<br><br>Plaintiff,<br><br>v.<br><br>VIRAL BHAGAT, a/k/a VIRAL UTPAL BHAGAT, BHAGGU,<br><br>Defendant. | 26-CV-4683 (RA)<br><br>ORDER |

RONNIE ABRAMS, United States District Judge:

On June 2, 2026, Plaintiff Anu Shah, proceeding *pro se*, filed the instant action against Defendant Viral Bhagat. Dkt. 1 ("Compl."). Shah is the "founder and operator of The Talk Lane," a "commercial podcast platform" hosting interviews with "business leaders" and other public figures. *Id.* ¶¶ 6–9. She alleges, in relevant part, that Bhagat operates defamatory websites that infringe on her service mark—"The Talk Lane"—as well as her copyrights in several photographs. *Id.* ¶¶ 96–104, 140. She brings federal claims against Bhagat for trademark counterfeiting, trademark infringement, false designation of origin and unfair competition, trademark dilution, copyright infringement, and cybersquatting, as well as state-law claims for defamation, tortious interference with prospective business relations, and intentional infliction of emotional distress. *Id.* ¶¶ 176–231.

The same day, Shah filed a motion for a temporary restraining order ("TRO") against Bhagat, seeking to enjoin him from (1) "[o]perating, hosting, linking to, transferring, or selling" the allegedly infringing websites; (2) using the "The Talk Lane" mark "in connection with any website, advertising, marketing or promotion"; (3) "[u]sing, reproducing, or displaying" the copyrighted photographs; (4) destroying any evidence relating to the allegedly infringing websites;

and (5) instructing "any other person or business entity" to do the same. Dkt. 3 ("Proposed TRO") at 3. Shah also seeks to enjoin any "Third Party Service Providers (including Amazon Web Services and applicable domain registrars)" from (1) "providing services to [Bhagat]," including the "continued operating and hosting" of these websites; and (2) permitting the "transfer or assignment" of these websites. *Id.* at 4. This case was then assigned to the Court on July 6, 2026.

In general, a court may not issue an "interlocutory" injunction over "a party over whom it does not have personal jurisdiction." *In re Rationis Enters., Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001); *see, e.g.*, *TV Tokyo Corp. v. Bear Hugs*, 2026 WL 1831336, at *1 (S.D.N.Y. June 25, 2026) (vacating a TRO for lack of personal jurisdiction). Shah alleges that personal jurisdiction exists over Bhagat, "a resident of Mountain View, California," pursuant to Section 302 of the C.P.L.R. and Federal Rule of Civil Procedure 4(k)(1)(A) because Bhagat has "committ[ed] torts targeted directly at" Shah, a New York resident, "and the Talk Lane Mark." Compl. ¶¶ 3, 10.

Shah grounds her TRO in both her trademark counterfeiting and infringement claims and her cybersquatting claim. Dkt. 5 ("TRO Mem."). Liberally construing the allegations in the Complaint in the light most favorable to Shah, and reading her pleadings with the "special solicitude" afforded to *pro se* litigants, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006), the Court understands her to allege that Section 302(a)(3)(ii) provides the basis for personal jurisdiction over Bhagat for her trademark claims. Specific jurisdiction exists under Section 302(a)(3)(ii) over any nondomiciliary who, in person or through an agent, "commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a); *see Studio Giraffe LLC v. Nizomov*,

2026 WL 1413583, at *3 (S.D.N.Y. May 20, 2026).

In general, for personal jurisdiction to exist over a nondomiciliary under Section 302(a)(3)(ii) for a trademark-infringement claim, a plaintiff must plead "harm to a business in New York through lost sales or lost customers" in New York, or other harm "in the New York market resulting from the confusion and deception of New York computer users." *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997); *see Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 625 (S.D.N.Y. 2013) (collecting cases). While Shah has pled that "she lost specific, demonstrable sponsorship opportunities for The Talk Lane and experienced high-profile guests cancelling appearances as a result of [Bhagat's] defamatory conduct," she has not alleged that these sponsors or guests were New York residents, or alleged that any other harm has accrued to her in the New York market.

Likewise, courts considering the application of Section 302 to cybersquatting claims have examined the degree to which a given website "targeted" New York residents such that the defendant operating it transacts business in New York pursuant to Section 302(a)(1) of the C.P.L.R. *Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp. 2d 211, 222 (W.D.N.Y. 2012). "To establish personal jurisdiction under Section 302(a)(1): (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Mattel, Inc. v. www.fisher-price.online*, 2022 WL 2801022, at *3 (S.D.N.Y. July 18, 2022). "A defendant purposefully avails itself of the forum state and thus transacts business if its website is interactive and solicits information from potential buyers in New York in order for the defendant to sell them products in New York." *Id.* By contrast, the mere publication of a statement on a website accessible to New York residents does not, without more, constitute transacting business within New York for the purposes of Section 302(a)(1). *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239,

250–51 (2d Cir. 2007); *Realuyo v. Villa Abrille*, 2003 WL 21537754, at *10 (S.D.N.Y. July 8, 2003). Shah has only alleged that the subject websites contain defamatory statements, and has not alleged that they are interactive or seek to sell products to New York customers.

Further, as the Second Circuit has noted, "[S]ections 302(a)(2) and (3)" of the C.P.L.R., "which permit jurisdiction over tortious acts committed in New York and those committed outside New York that cause injuries in the state, respectively, explicitly exempt causes of action for the tort of defamation from their scope." *Best Van Lines*, 490 F.3d at 245. Courts have rejected the exercise of personal jurisdiction under Sections 302(a)(2) and (3) over claims for other torts "based on the alleged defamatory" conduct. *Jolivet v. Crocker*, 859 F. Supp. 62, 65 (E.D.N.Y. 1994). "[J]urisdiction over a claim for defamation will lie under" Section 302 "only if the plaintiff shows that: (1) the defamatory utterance was purposefully directed at New York, as opposed to reaching New York fortuitously; and (2) the defendant transacted other business in New York that was directly connected to the claim asserted." *Symmetra Pty Ltd. v. Human Facets, LLC*, 2013 WL 2896876, at *9 (S.D.N.Y. June 13, 2013) (discussing Section 302(a)(1)). "A plaintiff may not escape the special rules applicable to allegations of defamation through artful pleading: when a claim, however denominated, sounds in defamation, the CPLR's defamation rules apply. Courts look to the substance, not merely the name, of a claim in order to determine whether that claim sounds in defamation." *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 231 (S.D.N.Y. 2015) (quotation omitted); *see also Lively v. Wayfarer Studios LLC*, 810 F. Supp. 3d 421, 435 (S.D.N.Y. 2025) ("[E]ven where a plaintiff alleges business and other economic harms, so long as those harms all flow from the effect on one's reputation, the claim sounds in defamation." (quotation and alterations omitted)). It is not clear whether Shah's non-defamation claims nevertheless "sound[] in defamation" such that personal jurisdiction over Bhagat may only

be exercised pursuant to the "special rules" applicable to allegations of defamation under Section 302(a)(1). *Tannerite Sports*, 135 F. Supp. 3d at 231.

Accordingly, Shah is directed to file a supplemental letter-brief by Friday, July 17, 2026, as to why the Court may exercise personal jurisdiction over Bhagat such that the Court may grant the relief requested in Shah's proposed TRO. Shah is further advised that, if she seeks legal assistance, she may consult with the City Bar Justice Center's clinic for *pro se* litigants by visiting its website at www.citybarjusticecenter.org/projects/federal-pro-se-legal-assistance-project, by calling (212) 382-4794, or by emailing fedprosdny@nycbar.org. This clinic, which is neither part of nor run by the Court, assists *pro se* litigants with federal civil cases, and may be able to counsel Shah as to how best to respond to this Order, and/or whether this action should be filed elsewhere.

SO ORDERED.

Dated: July 8, 2026
New York, New York

Ronnie Abrams
United States District Judge